Collins and Others *v.* Kemp and Another.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*T. F. Davidson,* for appellant.

*J. Ristine,* for appellee.

———————•———————

Collins and Others *v.* Kemp and Another.

Suit by A and B against C, D and E, alleging these facts: That C, being indebted to A, B and E, respectively, in sums named, evidenced by promissory notes, and being then the owner of a tract of land described, and in failing circumstances, was desirous of securing all of said claims; that to that end, and for the purpose of avoiding the expense of making separate mortgages, C executed to E a mortgage upon said land, expressing a consideration sufficient to cover all of said debts; that by an express agreement between A, B, C and E, the said notes held by A and B were to be secured by the mortgage, together with that held by E; that it was agreed that C should execute his notes to E for the amounts due A and B, and that E should execute to A and B his notes for like amounts; that the plaintiffs are ignorant whether C did execute his notes to E, but that E refuses to execute his notes to the plaintiffs; that C became insolvent and left the State, and that afterwards D, the wife of C, in a suit for divorce, recovered a judgment for alimony, and purchased the mortgaged premises upon execution, and that E, having been fully paid his debt, for the purpose of defrauding the plaintiffs, has surrendered the mortgage and refuses to pay them. The relief asked was a foreclosure of the mortgage. The mortgage described several notes payable to E, but there was nothing on the face of it to show that the plaintiffs had any interest in it. After the purchase of the lands by D on her execution, she paid E the amount claimed by him under the mortgage and took it up.

*Held,* that the mortgage, as described in the complaint, was not an assignment for the benefit of creditors, within the meaning of the statute upon that subject.

*Held,* also, that as E was only to be liable to the plaintiffs upon condition that C executed to him his notes for like amounts, the complaint was bad for the want of an averment that this had been done.

*Held,* also, that if D purchased the land in good faith, and afterwards bought in the mortgage, without any notice of the claim of the plaintiffs, she is entitled to protection against that claim.

APPEAL from the *Dubois* Circuit Court.

GREGORY, C. J.—The appellees filed a complaint against the appellants, charging that on the 8th of *November,* 1865, *James Collins* was indebted to *Thompson,* by note, in the sum of $640 40, and to *Nicholas Sinegar,* by note, jointly with *W. F. Kemp,* who was his surety, in the sum of $600; and that *Collins* was also indebted to the appellee, *Green Kemp,* in the sum of $100. Copies of all these notes are made exhibits to the complaint. That on the 8th day of *September,* 1865, *Collins* was the owner of a tract of land described, in *Dubois* county; that he was in failing circumstances, and about to become insolvent, owning but little, if anything, else besides said land, which was worth $3,000; that being desirous of securing the parties above named, as well as others, the amount of said debts, and for the purpose of avoiding the expense of giving separate mortgages, and for the purpose of avoiding all questions as to the priorities of liens upon said lands, and for the purpose of giving each of said creditors equal security, said *Collins* executed and delivered to *Thompson* a mortgage upon said lands, expressing the consideration of $2,500, which was sufficient to cover *Collins'* indebtedness, and that the mortgage was duly recorded on the 14th day of *November,* 1865. A copy of the mortgage is set out. The complaint further charges that the mortgage was intended to secure other claims, but plaintiffs do not know to whom they are due; that by an express agreement and understanding between *Collins,* *Thompson* and *Kemp,* the claims above mentioned were to be secured by the mortgage, and the lien upon the land was to be for the benefit of all said appellees and said *Thompson,* and that no one should be preferred; that in order to make *Collins'* indebtedness to his several creditors agree with the descriptions of the notes mentioned in the mortgage, it was agreed that *Collins* should execute to *Thompson* notes cor-

responding with the sums expressed in said mortgage, and that *Thompson* should execute his notes to the appellees for their several debts; that plaintiffs are ignorant as to whether *Collins* executed his notes or not, but that *Thompson* refuses to execute his notes to appellees, or to pay their said debts; that within a few days after making the mortgage, *Collins* left the State, wholly insolvent, and owning no other property; that shortly afterwards, *W. F. Kemp* paid *Sinegar* the note for $500, as surety for *Collins;* that shortly after *James Collins* left the State, appellant *Mary* brought a suit for divorce, in the *Warrick* Circuit Court, against said *James,* and claims to have recovered a judgment for alimony, and, upon execution issued thereon, to have sold the property mentioned in the mortgage, and to have become the purchaser thereof, and that though *Thompson* was fully paid by *Collins,* he has, for the purpose of cheating the appellees, delivered the mortgage to the appellant, and now refuses to pay *Kemp,* or to foreclose the mortgage, or to deliver the same to the appellees, and said *Mary* sets up title to the land in fee simple. Prayer, that the appellees' rights, under the mortgage, may be established, and for a foreclosure of the mortgage and sale of the land. The notes are set out as follows: 1. Note from *James Collins* and *W. F. Kemp* to *Nicholas Sinegar,* dated *October* 31, 1865, at twelve months, for $500. 2. Note from *James Collins* to *G. A. Kemp,* dated *November* 22, 1864, at twelve months, for $100. 3. Note from *James Collins* to *G. A. Kemp,* dated *January* 13, 1864, at twelve months, for $100. The mortgage, which is in the statutory form, is to *Thompson,* of the lands described in the complaint, and, after the description of the land, proceeds thus: "To secure the payment of the following described notes, given by *James Collins* to *William Thompson:* No. 1, for six hundred and forty-seven dollars and sixty-six cents, dated *November* 7, 1865, due twelve months after date; No. 2, for five hundred dollars, dated *October* 31, 1865, due twelve months after date, without interest; No. 3, for two hundred and twelve dol-

lars, due; No. 4, for two hundred and twenty-four dollars, due *February*, 1866, with interest from date; No. 5, for two hundred and ——— dollars, due ———; No. 7, for five hundred and eighty-six dollars and thirty-six cents, due three years after date, *November* 8, 1865, with interest from date."

The appellant *Mary Collins* demurred to the complaint for want of sufficient facts, but the demurrer was overruled and she excepted, and filed an answer in three paragraphs. 1. The general denial.  2. Admitting the execution of the mortgage by *Collins* to *Thompson*, setting out a copy, and alleging that the mortgage was made to secure the payment of two notes, of which copies are made exhibits; that after the making of said notes, appellant obtained a decree for alimony, in the *Warrick* Circuit Court, against *James Collins*, for $3,000; that an execution was duly issued and delivered to the sheriff of *Dubois* county, who, by virtue thereof, on the 7th day of *July*, 1866, sold the mortgaged premises to the appellant, and gave her a certificate of purchase, which is also made an exhibit, and is in the usual form; that under said purchase she has ever since been in possession of said premises, claiming them as owner in fee, and receiving the rents and profits therefrom; that after said sale, appellant purchased said notes and mortgage from *Thompson*, who assigned the same to her, and denying all notice of appellees' claim.

The third paragraph is the same as the second, with the additional allegation that the appellant *Mary Collins*, before buying at sheriff's sale, inquired of *Thompson* concerning the mortgage, and he told her the two notes mentioned in the answer were all the notes about which he knew anything, and that *Thompson* further told her that he never agreed to hold said mortgage, as trustee or otherwise, for the other creditors.   This paragraph also prays a foreclosure upon said notes.   The notes set out in the answer are a note made by *James Collins*, payable to *M. K. Hall*, dated *January* 24, 1864, due *March* 1, 1865, for $100; and one

dated *November* 7, 1865, to *William Thompson*, at one year, for $647 66.

There was a reply in denial of the second and third paragraphs of the answer. Trial by the court; finding and judgment for the appellees, and a decree for the sale of the mortgaged premises and a foreclosure of the equity of redemption of the appellant. A motion for a new trial, assigning for cause, 1st, that the judgment is contrary to law; 2d, not sustained by sufficient evidence; and 3d, that the court erred in improperly admitting certain evidence, was overruled and exception taken.

The evidence is all in the record, and is, in substance, as follows: The appellees put in evidence the three notes sued on. The appellees then, over the objection and exception of the appellant, proved that shortly before the making of the mortgage to *Thompson*, *Collins* had gone to *G. A. Kemp* and asked him to take his land and pay his debts. *Kemp* declining, *Collins* made a deed of the land to *Rust*. *Collins* afterwards said he could have done better; that his old friend, the defendant *Thompson*, proposed that he, *Thompson*, would have furnished the money, and that he, *Collins*, ought to have called upon him. *Collins* said if *Rust* would agree to it, he would mortgage to *Thompson*, he, *Thompson*, having intimated that the deed to *Rust* was not a safe mortgage; whereupon *Rust* agreed to it, and burned the deed to him. *Kemp* then told *Collins* that such an arrangement must be made as to secure his note against him. *Collins* said, "well." *Thompson* said nothing. Afterwards, *G. Kemp* went to see *Thompson*, who said that he knew nothing, except that he had furnished *Collins* some means. Afterwards, *Thompson* saw *DeBruler*, and said that he was informed that he was not liable any further than he acknowledged debts that were secured by the mortgage. *Thompson* afterwards told *Kemp* he would have nothing further to do with the matter; that the land was worth about $3,500, and that the mortgage was given to secure about $1,200, including the notes made exhibits to the com-

plaint. *Rust* testified that he got the impression that *Thompson* was to take his place; that is, to take the land and pay the debts of *Collins.*

The appellant *Mary A. Collins* objected to the testimony of witnesses, as to what was said in her absence, the same being hearsay, and also irrelevant and incompetent.

The appellants put in evidence the record of the divorce suit, resulting in a sale of the mortgaged premises to her, and also the certificate of the sheriff, showing that she was entitled to a deed therefor; and *Thompson* also testified that the mortgage was made to him after the destruction of *Rust's* deed, to secure the two notes due him; that he heard nothing about "stepping in his shoes." *Collins* said he would like to have *G. Kemp's* claim secured; and *Thompson* told him he had better give the mortgage to *Kemp* and *Thompson*; that there was no arrangement for *Thompson* to be a trustee for *Collins. Thompson* accepted the mortgage and sold it to Mrs. *Collins*, and informed her at the time of the sale that the notes numbered 4 and 5 in the mortgage were all he knew anything about, they being his notes, for which she paid him, and that the sum covered by these notes was all he, *Thompson*, had any interest in. The sale of the mortgage was after the sheriff's sale. The mortgage came to *Thompson* by mail, ten or twelve days after it was recorded, and that was the first he ever saw of it.

The first error complained of is the overruling of the demurrer to the complaint. It is claimed that the instrument set out as a mortgage, and for the foreclosure of which the action is brought, is, by the allegations of the complaint, an assignment for the benefit of creditors, within the meaning of the act of *March* 5, 1859, (1 G. & H. 114) and is therefore void. We hold that it is not an assignment within the meaning of the statute.

But we think the complaint is bad for another reason. By the terms of the parol agreement set up, *Collins* was to execute his notes to *Thompson* corresponding with the sums expressed in the mortgage, and *Thompson* was to execute

his notes to the appellees for their several debts. The allegation is, that the plaintiffs are ignorant as to whether *Collins* executed his notes or not. *Thompson* was under no obligation to execute his notes to the appellees until *Collins* complied with his contract with him. *Thompson* having agreed to be liable in a particular manner, could not be held in a different one. The notes of the appellees were not described in the mortgage. The mortgage could not be reformed in this respect, unless for fraud, accident or mistake. The rights of the appellant, *Mary Collins*, could not be affected by a parol agreement of which she had no notice. The court below erred in overruling the demurrer to the complaint. Under a proper averment of mistake, and notice thereof to *Mary Collins*, the evidence offered and admitted would have been legitimate.

If Mrs. *Collins* was the purchaser, in good faith, of the mortgage to *Thompson*, without notice of the rights of the appellees, she cannot be affected by any parol agreement between *Thompson*, *Collins* and the appellees, made at the time of its execution. If she purchased the land at sheriff's sale, in good faith, and then purchased in the outstanding mortgage, she is entitled, in the absence of notice, to be protected as a *bona fide* purchaser without notice.

The judgment is reversed, with costs, and the cause remanded, with directions to sustain the demurrer to the complaint, and for further proceedings.

*A. Iglehart* and *I. S. Moore*, for appellants.

*L. Q.* and *C. A. De Bruler* and *G. T. B. Carr*, for appellees.