## KING ET AL. *v.* EDWARD THOMPSON COMPANY.

[No. 8,249.    Filed February 20, 1914.    Rehearing denied May 15, 1914.]

1. SALES.—*Offer and Acceptance.—Writings.*—Although a written proposition for the purchase of books must be accepted to become a binding contract, the acceptance need not be in writing.    p. 278.

2. PLEADING.—*Complaint.—Initial Attack After Verdict.*—A complaint questioned for the first time after verdict will be held sufficient if it does not wholly omit some material averment and is sufficient to bar another action for the same cause.    p. 278.

3. SALES.—*Action for Price.— Complaint.—* A complaint for the purchase price of books sold, alleging that defendant gave a written order therefor, made a part of the complaint in pursuance of which plaintiff shipped the books, that defendant accepted and retained them, that plaintiff has performed its contract and that a certain balance is due it, states a cause of action.    p. 278.

4. SALES.—*Action for Price.—Admissibility of Evidence.—Mistake.*—In an action for the balance due from defendant for the purchase of a set of books where defendant prayed for a reformation of the contract on the ground that the order signed by and left with him differed in its terms from that signed by him and pleaded by plaintiff, and for damages for breach, both copies of the orders were admissible to prove the real contract between the parties, and evidence as to all that occurred at the time was also admissible as bearing on the question of mutual mistake and right to reformation, but not to vary the terms of the contract when reformed.    p. 280.

5. SALES.—*Warranty.—Evidence.—Inferences.—Representations.*—Where a seller's printed order form provided that no representations or guarantees had been made by the salesman on behalf of the plaintiff, other than expressed in such order, the fact that such provision was stricken out warrants the inference that representations or guarantees not expressed therein had been made.    p. 281.

6. PRINCIPAL AND AGENT.—*Evidence.—Authority.*—The provision in a seller's printed order form that no representations or guarantees have been made by the salesman on behalf of the seller which are not therein expressed warrants an inference that the salesman is authorized to make changes in the contract or representations of a kind not therein expressed.    p. 281.

7. PRINCIPAL AND AGENT.—*Liability of Principal.—Agent's Apparent Authority.*—Where the issue is between the principal and a third party who has dealt *bona fide* with the agent, the principal will be bound by the apparent authority given to the agent and

relied upon by such third party; hence defendants in purchasing books through plaintiff's salesman had a right to infer that such salesman was authorized to take their order subject to plaintiff's approval, which necessarily implied authority to make such statements and representations relating to the books and the order as are usually incident to such transactions.  p. 281.

8. REFORMATION OF INSTRUMENTS.— *Right to Remedy.*— *Harmless Error.*—A contract will not be reformed to correct an immaterial matter, hence where defendant in an action for the purchase price of books sought to have the contract reformed in a way that could have given no additional right or defense, so that the result of the action must have been the same whether reformation were granted or refused, no harm resulted in the court's refusal to submit to the jury the question of mutual mistake.  p. 282.

9. EVIDENCE.—*Contracts.*—*Merger of Prior Negotiations.*—Where a written order evidenced a contract for the sale and purchase of books at a stipulated price, binding on defendant, prior negotiations and representations relating to new editions and supplemental volumes were merged in the order, and the question of the salesman's implied authority to make representations as to such matters, and which were not included in the order, was unimportant.  p. 282.

10. CONTRACTS.— *Parol Evidence.*— *Warranties.*— An express warranty can not be imported into a written contract by parol evidence.  p. 283.

11. REFORMATION OF INSTRUMENTS.—*Grounds.*—*Question of Law.*— Whether the striking out of a provision in an order that no representations or guarantees had been made by the salesman on behalf of the seller which were not therein expressed, would obviate the necessity of writing certain representations into the order so as to make it express the real agreement of the parties, was a question of law and not of fact, and would not in the absence of fraud warrant the reformation of the instrument.  p. 284.

12. ALTERATION OF INSTRUMENTS.— *Memorandum on Order.*— The act of a seller of law books in stamping on the written order the words "It is understood that during the life of this contract the price paid includes a subscription to 'Law Notes' " was not a material alteration affecting the rights of the parties in an action for the purchase price of the books, especially in view of evidence that defendants received and accepted the publication.  p. 284.

From Huntington Circuit Court; *Samuel E. Cook*, Judge.

Action by the Edward Thompson Company against Emmett O. King and another. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*Lesh & Lesh* and *C. W. Watkins,* for appellants.

*John Q. Cline, William A. Branyan* and *Claude Cline,* for appellee.

FELT, J.—Appellee recovered judgment against appellants for $140 alleged to be due for law books. From this judgment appellants have appealed and assigned as error that the complaint does not state facts sufficient to constitute a cause of action; that the court erred in directing a verdict for the appellee, and in overruling appellants' motion for a new trial.

The gist of the complaint is that on March 13, 1906, appellants Emmett O. King and Francis I. Stults, law partners, by written order marked exhibit A and made a part of the complaint, purchased from appellee the American and English Encyclopedia of Law, consisting of thirty-two volumes and four supplemental volumes; that in pursuance of said order, appellee sent the books to appellants, who accepted them, have them in their possession and agreed to pay therefor $7.50 per volume, an itemized account of which marked exhibit B, is made a part of the complaint; that appellee has fully complied with its contract and there is due and unpaid on said order a balance of $140. Exhibit A made a part of the complaint is as follows:

"To Edward Thompson Company (a corporation organized under the laws of New York), Northport, L. I., N. Y. 3/13, 1906. Please deliver to me the complete set of the second edition of the American and English Encyclopedia of Law, consisting of thirty-two volumes, and the four volumed supplement thereto as issued, for which I agree to pay $7.50 per volume, carriage paid. Terms—The amount of the above volumes I agree to pay as follows: $5.00 May 13, 1906, and the balance in installments of $10.00 each, payable quarterly for two years, then $15.00 quarterly until paid. I hereby expressly agree that the right of property in all volumes unpaid for shall remain in Edward Thompson Company until the same are wholly paid for. *No representations or guarantees have been made by the salesman on behalf of the Edward Thompson Company which are not herein*

*expressed.* I hereby acknowledge the receipt of a dupli- cate of the agreement. This order is subject to the ap- proval of Edward Thompson Co. Reference ——— (Signed) King & Stults. It is understood that during the life of this contract the price paid includes a sub- scription to 'Law Notes'. Original. Agent N. H. Hearn."

The appellants filed answer in three paragraphs, the first of which is a verified general denial. In the second paragraph of answer, appellants admit that they gave an order for said books in 1906; that they received the books ordered and have not paid the full amount of the purchase price, but they further allege that a part of the considera- tion for the execution of said order was the verbal repre- sentation and guarantee of the agent of appellee who took the order that the second edition purchased by them was the last edition of said work that would ever be issued and that the same would be kept up by supplemental volumes; that they relied on said representations and guarantee and believed them to be true and were thereby induced to give said order and would not have done so had it not been for said representations, which were false; that appellee there- after discontinued said supplemental volumes and issued a third edition of said work; that the consideration which induced appellants to execute said order failed; that by reason of the fact that said edition had been superseded by a third edition, the books purchased by appellants are prac- tically of no value; that they have paid on said contract $130 which is in excess of the value of the books. Prayer for judgment against appellee for costs.

The third paragraph by way of counterclaim avers the same facts as the second paragraph of the answer and sets out a written order marked exhibit 1, which is the same as appellee's exhibit A except the portion italicized is omitted and the order appears to be signed by both partners indi- vidually and by the firm name. It also averred that appel- lants requested said agent to write into said order the agree-

ment that said work would be kept up by supplemental volumes and that no other edition would be issued; that thereupon said agent struck out of said order the words "No representations or guarantees have been made by the salesman on behalf of the Edward Thompson Company which are not herein expressed" and "thereupon suggested that this would obviate the necessity of putting said guarantee in said written order"; that said instruments purported to be true duplicates of the order; that appellants read the copy exhibit 1 before signing the same and after they had signed the order, said agent handed them the additional copy, which he represented was a duplicate of the one already signed; that they believed the same was a true duplicate of the one already signed and so believing, signed said second copy without reading it, that the provision stricken out of said order first signed as aforesaid was not stricken out of alleged duplicate because of mutual mistake and inadvertence of the agent of appellee and of these appellants; that said instrument sued on was intended to be a true copy of the one read and first signed as aforesaid. Prayer for reformation of the contract "So as to conform to the agreement of said parties as intended and as expressed in the copy of the order so left with the defendants" and for judgment in damages for breach of the contract in the sum of $100.

Appellants contend that the complaint is insufficient because it does not aver or show that appellee accepted the order in writing; that to make a written contract, there must have been an acceptance in writing of the order given for the books. The proposition must have been accepted to become a binding contract, but such acceptance was not necessarily in writing. The complaint shows that appellee shipped the books in pursuance of the order; that appellants accepted them and retained possession thereof. The complaint is questioned for the first time after verdict,

and will be held sufficient if it does not wholly omit some material averment, and is sufficient to bar another suit for the same cause of action. It states a cause of action.

The motion for a new trial presents the one controlling question in this case which is the correctness of the action of the trial court in directing a verdict for the appellee. It was proven that appellant, King, was the law partner of his coappellant Stults, and that he signed the firm name to both copies of the order. By his own testimony he admitted this to be true and that he signed the individual names of the firm to the copy known as exhibit 1. The amount is not disputed provided appellants are bound by the written order, but this is questioned on the theory that the agent of appellee, by verbal statements made before the order was signed, represented that no new editions of the work would be issued and that it would be kept up by supplemental volumes. Exhibit A is marked "original" and exhibit 1 is marked "duplicate". Appellants claim the difference in the wording of the two copies of the order is due to a mutual mistake; that the instrument should be reformed by making the copy relied on by appellee correspond to the copy set out as exhibit 1; that after the instrument is so reformed they should be permitted to prove by parol testimony the verbal representations of the agent relating to new editions and supplemental volumes, made prior to the signing of the order. It will be observed that either copy of the instrument is an unambiguous order for the books, conditioned only on appellee's approval thereof. The only effect of reforming the order as requested would be to make the copies exactly alike by striking out of exhibit A the words to the effect that no representations or guarantees of the agent had been made except those stated in the written order. The important question therefore relates to the proposition of new editions and supplemental volumes.

Three questions are suggested and discussed by counsel, relating to the court's action in directing a verdict for

appellee, viz., (1) Is there any evidence tending to show that the agent who took the order had any authority to bind appellee by representations or guarantees in regard to new editions and supplemental volumes? (2) Is there any evidence tending to show a mutual mistake of the parties? (3) Are appellants bound by the printed order, or may they prove by parol testimony the alleged representations and guarantees of said agent?

The averments of the cross-complaint show clearly that appellants proceeded on the theory that exhibit 1 is the form of order agreed upon by them and said agent; that the copies signed by them purported to be true duplicates and the failure to strike said words from the copy last signed was due to the mutual mistake and inadvertence of said agent and appellants; that they believed exhibit A to be such duplicate and for that reason signed the same without reading it. Neither the averments nor the proof indicate any written acceptance or approval of the order, but it is shown that the contract was consummated by shipment of the books to appellants by appellee and by their acceptance of them. There was therefore an executed agreement, but if a mutual mistake was made as alleged exhibit A did not accurately express the terms of the contract. Both copies of the order appear to be signed by Hearn, the agent of appellee as well as by appellants and this tends to support the inference that both appellants and said agent intended the copies to be alike. Under the issues and the proof that both copies were signed by appellant King, as averred in the counterclaim, both copies of the order were proper evidence tending to prove the real contract between the parties. All that occurred in relation thereto just before or at the time of the signing of the order, in other words, the *res gestae* of the transaction, was admissible in evidence under the issues to determine the question of mutual mistake and the right to a reformation of the instrument as prayed. 34 Cyc.

979 *et seq.; Harmon* v. *Pohle* (1914), 55 Ind. App. 439, 103 N. E. 1087; *Nichols & Shepard Co.* v. *Berning* (1906), 37 Ind. App. 109, 117, 76 N. E. 776. But reforming the contract as prayed does not reach the question of new editions and supplements, except in so far as making exhibit A conform to exhibit 1 may affect the question. The instrument, if reformed as prayed, would still be an order for the books with definite provisions as to price, delivery and terms of payment. The fact that the printed form contained

5. the stipulation as to representations of the agent, and that in this instance it had been stricken out would warrant the inference that representations or

6. guarantees not herein expressed had been made, else there would be no purpose in striking out the provision from the order. The provisions are not like those which state that the agent has no authority to make changes in the contract, or representations of any kind not therein expressed, for the language here employed would warrant the inference that he has such authority. *Bragg* v. *Bamberger* (1864), 23 Ind. 198, 201; *Talmage* v. *Bierhause* (1885), 103 Ind. 270, 275, 2 N. E. 716.

Where the issue is between the principal and the third party who has dealt *bona fide* with the agent, the principal will be bound by the apparent authority given

7. the agent by him and relied upon by such third party. *McCaskey Register Co.* v. *Curfman* (1910), 45 Ind. App. 297, 305, 90 N. E. 323; 1 Clark & Skyles, Agency §196; *Lucas* v. *Rader* (1902), 29 Ind. 287, 290, 64 N. E. 488; *Over* v. *Shiffling* (1885), 102 Ind. 191, 196, 26 N. E. 91; *Indiana Ins. Co.* v. *Hartwell* (1885), 100 Ind. 566, 568. The appellants had the right to act upon the assumption that Hearn, the agent, had the authority to take orders for the books, subject to the approval of appellee, and such power would imply authority to make such statements and representations relating to the books and the order as are usually incident to such transactions.

We have indicated that there is evidence tending to prove a mutual mistake of the parties in the execution of the order.  This is not alone sufficient ground to reverse the judgment in this case.  A contract will not be reformed to correct a mistake relating to an immaterial matter.  If the contract when reformed as prayed, will not give the party seeking its reformation any different, or additional right or defense, from that possessed by him before such reformation, he is not entitled to have it reformed.  In this case the result must have been the same with or without the reformation of the order as prayed.  Therefore no harm resulted to appellants by the refusal of the court to submit to the jury the question of mutual mistake.  *Ray* v. *Ferrell* (1891), 127 Ind. 570, 574, 27 N. E. 159; 20 Am. and Eng. Ency. Law (2d ed.) 821; 34 Cyc. 946; *Adams* v. *Gillig* (1910), 199 N. Y. 314, 92 N. E. 670, 32 L. R. A. (N. S.) 127, 20 Ann. Cas. 910; *Burner* v. *Higman & Skinner Co.* (1907), 133 Iowa 315, 317, 110 N. W. 580.  As already indicated either copy of the written order after acceptance, evidenced a contract for the regular thirty-two volumes and the four volumes of the supplement then issued.  The pleadings do not present the question of fraud in the procurement of the order and furthermore the signing of both copies is admitted by appellants.

The question of other supplemental volumes and new editions relate to the future and if the pleadings were otherwise sufficient to present the question of fraud this would render them insufficient.  The theory of the cross-complaint is clearly that of reformation on the ground of mutual mistake as above indicated, and for damages because of the depreciation in value of the books caused by the issuance of a new edition and the failure to continue to issue supplemental volumes.  But conceding the mutual mistake alleged and the right to reform the order as

prayed, in the absence of any question of fraud in procuring its execution, and viewing it as reformed, after its approval by appellee and the shipment and acceptance of the books, the order as reformed evidences a complete contract for the books at a stipulated price and is binding on appellants. In such case the prior negotiations are merged in the written contract. On the issues presented we hold that appellants could not bind appellee by verbal representations and guarantees relating to new editions and supplemental volumes alleged to have been made prior to the execution of the order. In this view of the case the question of the implied authority of the agent to make the representations and guarantees alleged is not important. *Mc Caskey Register Co.* v. *Curfman, supra; Carskaddon* v. *City of South Bend* (1895), 141 Ind. 596, 601, 39 N. E. 667, 41 N. E. 1; *Board, etc.* v. *Gibson* (1902), 158 Ind. 471, 482, 63 N. E. 982; *Davis* v. *Talbot* (1894), 137 Ind. 235, 238, 36 N. E. 1098; *National Cash Register Co.* v. *Dehn* (1905), 139 Mich. 406, 415, 102 N. W. 965; *National Cash Register Co.* v. *Dehn* (1908), 155 Mich. 99, 118 N. W. 724. As already shown, the written order, if reformed as prayed, would still evidence a complete written contract when accepted by appellee. Where there is a written instrument embodying the terms of the contract between buyer and seller, an express warranty can not be imported into the contract by parol evidence. *Conant* v. *National State Bank* (1889), 121 Ind. 323, 326, 22 N. E. 250; *Carver* v. *Lewis* (1886), 105 Ind. 44, 53, 2 N. E. 714; *Johnston Harvester Co.* v. *Bartley* (1882), 81 Ind. 406, 407; *Shirk* v. *Mitchell* (1894), 137 Ind. 185, 190, 36 N. E. 850; *McCormick, etc., Co.* v. *Yoeman* (1901), 26 Ind. App. 415, 418, 59 N. E. 1069; *Johnson* v. *McCabe* (1871), 37 Ind. 535, 540; *Rose* v. *Hurley* (1872), 39 Ind. 77; *Welz* v. *Rhodius* (1882), 87 Ind. 1, 4, 44 Am. Rep. 747; *Dutton* v. *Gerrish* (1851), 63 Mass. 89, 55 Am. Dec. 45;

*Thompson* v. *Libby* (1885), 34 Minn. 374, 26 N. W. 1; *Naumberger* v. *Young* (1882), 44 N. J. L. 331, 43 Am. Rep. 380; 30 Am. and Eng. Ency. Law (2d ed.) 168 *et seq.*

It is not averred nor do appellants claim that the order should have contained the provisions relating to new editions and supplemental volumes, but the averments of the counterclaim show that appellants voluntarily and knowingly acquiesced in the suggestion of the agent that striking out the aforesaid provision would obviate the necessity of writing the provisions into the order. There is no claim of any deception or fraud by means of which appellants were induced to accept the suggestion of the agent of appellee. Whether striking out said provision would or would not obviate the necessity of writing into the order the provisions aforesaid, to make it express the real agreement of the parties, was a question of law and not of fact, and therefore would not on the showing made warrant the reformation of the instrument. 34 Cyc. 912; *Allen* v. *Anderson* (1873), 44 Ind. 395, 400. The stamping on the order of the memoranda: "It is understood that during the life of this contract the price paid includes a subscription to 'Law Notes'" was not a material alteration which on the facts of this case affected the rights of the parties to this suit in any way. Furthermore appellants admit that they received and accepted the publication. 2 Am. and Eng. Ency. Law (2d ed.) 184, *Schnewind* v. *Hacket* (1876), 54 Ind. 248. Under the issues of this case and the undisputed evidence there is no ground for any inference other than that of appellants' liability, and for this reason the court did not err in directing a verdict for the liquidated amount. Judgment affirmed.

NOTE.—Reported in 104 N. E. 106. As to liability of principal for unauthorized act of agent, see 22 Am. St. 189; 88 Am. St. 779. See, also, under (1) 35 Cyc. 86; (2) 2 Cyc. 691; (3) 35 Cyc. 549; (4) 35 Cyc. 566; 34 Cyc. 980, 981; 17 Cyc. 705; (5) 35 Cyc. 464; (6) 31 Cyc. 1353; (7) 31 Cyc. 1331; (8) 3 Cyc. 383; (9) 17 Cyc. 596; (10) 17 Cyc. 611; (11) 34 Cyc. 911; (12) 2 Cyc. 190.